UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

——————————————————— X

SHARMIN FARUQUE,

                Plaintiff,

      v.

JP MORGAN CHASE & CO., and
JPMORGAN CHASE BANK,
NATIONAL ASSOCIATION,

                Defendants.

——————————————————— X

**REPORT &
RECOMMENDATION**

24-cv-5734 (OEM) (LKE)

**LARA K. ESHKENAZI**, United States Magistrate Judge:

Plaintiff Sharmin Faruque ("Faruque" or "Plaintiff") filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the New York State Human Rights Law, New York State Executive Law §§ 296 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, New York City Administrative Code §§ 8-107 *et seq*. ("NYCHRL"), alleging discrimination on the basis of national origin and gender by JP Morgan Chase & Co. ("JP Morgan Chase"), and JPMorgan Chase Bank, National Association ("Chase Bank") (together "Chase" or "Defendants"). Before the Court is the motion of Defendants to compel arbitration and stay the action. For the reasons set forth below, the Court respectfully recommends denying the motion.

I.    **BACKGROUND**

A.    **Factual Background**

1.    **Allegations in the Amended Complaint**

Plaintiff began working for Chase as the Vice President, Credit Risk & Wholesale Analytics, in September of 2021. (Am. Compl. ¶ 22, ECF 9.) Prior to her employment with Chase, Plaintiff worked in management positions at both Citi Bank and Credit Suisse. (*Id.* ¶¶ 19-21.) In her role at Chase, Faruque's responsibilities included managing a team of two vice presidents and three analysts, analyzing the wholesale credit risk portfolio, producing analysis reports for the Board of Directors, giving quarterly presentations to the CFO, and providing guidance on strategy to senior management. (*Id.* ¶ 23.) Plaintiff asserts that she was an exemplary employee, was well-qualified for her position, and received positive performance reviews in both 2021 and 2022. (*Id.* ¶¶ 25-27.)

Plaintiff alleges that she was "discriminated against as an Indian woman, including by being excluded from workplace meetings, being overlooked for promotions, and paid less in performance bonuses vis-à-vis her white male subordinate." (*Id.* ¶ 28.) Plaintiff was the only Indian woman on her team; her supervisor, Gordon Hunt ("Hunt"), was a white male, as was one of her subordinates, Michael Calceglia ("Calceglia"). (*Id.* ¶¶ 29-30, 40.) Plaintiff alleges that Hunt treated her disparately based on her national origin and gender, and sought to impede her career while "grooming Calceglia for a Vice President position." (*Id.* ¶¶ 40, 42.) According to the Amended Complaint, Hunt "repeatedly told Plaintiff to call him 'Boss' – a request he did not make of any males." (*Id.* ¶ 33.) Plaintiff also alleges that Hunt "often took the side of Plaintiff's male subordinates in workplace disputes," and "mocked Plaintiff" by stating "[i]t's a he said she said situation" when questioning "whether she was telling the truth." (*Id.* ¶¶ 35-37 (internal quotation

2

marks omitted).) When Plaintiff complained to Hunt regarding his treatment of her, she alleges that Hunt did not take her complaints seriously and instead attempted to dissuade her from filing a complaint with the human resources department. (*Id.* ¶¶ 62-66.) After Plaintiff initially reported her concerns to human resources via an employee survey, she alleges that Hunt retaliated against her, and Chase took no action to protect her or respond to her complaint. (*Id.* ¶¶ 71-87.)

Plaintiff also alleges that Calceglia, her subordinate, responded aggressively to feedback and was rewarded with a larger bonus than Plaintiff. (*Id.* ¶¶ 94, 106, 109-113, 121-126.) Plaintiff claims that when she complained about being paid a lower bonus than Calceglia, Director Jodi Netch ("Netch") told her that Chase was a "boy's club" and confirmed that Hunt had discriminated against other women. (*Id.* ¶¶ 128-129.) Netch complained to Hunt regarding his behavior, but Hunt did not change. (*Id.* ¶ 133-136.) According to the Amended Complaint, despite repeated complaints about Calceglia and Hunt, "Chase has not remediated the hostile work environment and harassment that Plaintiff experienced," allowing Plaintiff's "harassers to act with impunity." (*Id.* ¶¶ 176-177.) Plaintiff's Amended Complaint alleges claims of discrimination and retaliation under Title VII, discrimination and retaliation under the NYSHRL, and discrimination and retaliation under the NYCHRL for the treatment she experienced. (*Id.* ¶¶ 188-209.)

### 2.      The Arbitration Agreement

When Plaintiff began working for Chase in September of 2021, Plaintiff received and accepted an offer letter which included "a detailed, multi-paragraph explanation of [Chase's] Employment Arbitration Agreement ('Arbitration Agreement')." (Defs. Mem. L. at 3, ECF 17-1.) The Arbitration Agreement detailed the parties' agreement to arbitrate employment disputes, including by stating that "[a]s a condition of and in consideration of [Plaintiff's] employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, any and all covered claims

3

between Plaintiff and JPMorgan shall be submitted to and resolved by final binding arbitration in accordance with [the] agreement." (*Id.* at 3 (internal quotations omitted).) The Agreement defines "Covered Claims" to include "all legally protected employment-related claims…which arise out of or relate to [Plaintiff's] employment or separation from employment with [JPMorgan]…including, but not limited to, claims of employment discrimination or harassment…and retaliation[.]" (*Id.*)

### B.     Procedural History

Plaintiff filed her initial Complaint on August 16, 2024, (Compl., ECF 1), and an Amended Complaint on August 30, 2024, (ECF 9). Defendants filed a waiver of service on September 12, 2024. (ECF 10.) On November 4, 2024, Defendants filed a letter motion for a pre-motion conference on an anticipated motion to compel arbitration, which Plaintiff opposed. (ECFs 11, 12.) The Honorable Orelia M. Merchant referred both the motion for a pre-motion conference and the anticipated motion to compel arbitration to the undersigned on November 6, 2024. (Nov. 6, 2024, Order Referring ECF 11.)

Defendants filed the instant fully-briefed motion to compel arbitration on April 17, 2025. (ECF 17.) Plaintiff filed a letter notice of supplemental authority on June 17, 2025, which Defendants responded to on June 26, 2025. (ECFs 18, 19.)

## II.     LEGAL STANDARDS

### A.     The Federal Arbitration Act

Section 4 of the Federal Arbitration Act (the "FAA") provides that parties can petition the district court for an order compelling arbitration. *See* 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action

or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. A party has "refused to arbitrate" within the meaning of Section 4 if it "commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." *LAIF X SPRL v. Axtel, S.A. de C.V.*, 390 F.3d 194, 198 (2d Cir. 2004) (citation and brackets omitted); *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) (finding no refusal to arbitrate where respondents had neither commenced litigation nor failed to comply with an order to arbitrate).

The FAA provides that "a written provision in any…contract evidencing a transaction involving commerce to settle by arbitration… shall be valid, irrevocable, and enforceable…" 9 U.S.C. § 2. The FAA indicates a "national policy favoring arbitration" where the parties have agreed to arbitrate. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016). The Supreme Court has held that "arbitration agreements are simply contracts" which can resolve disputes "'that the parties have agreed to submit to arbitration.'" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). The courts of this Circuit have followed the Supreme Court's guidance, reinforcing that "courts must rigorously enforce arbitration agreements according to their terms" and that, when the parties' contract has delegated a specific question to the arbitrator, "the courts must respect the parties' decision as embodied in the contract." *Frazier v. X Corp.*, 155 F.4th 87, 96 (2d Cir. 2025) (citing *Cedeno v. Sasson*, 100 F.4th 386, 394 (2d Cir. 2024); *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 118 (2d Cir. 2025)).

The court must first determine "whether a valid arbitration agreement exists" by evaluating traditional contract principles. *Coinbase, Inc.*, 602 U.S. at 149. In so doing, the court must answer two preliminary questions: "1) whether the parties agreed to arbitrate, and, if so, 2) whether the

5

scope of that agreement encompasses the claims at issue." *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015). The non-moving party "bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue." *Padula v. eBay*, No. 21-cv-5391 (MKB) (SJB), 2022 WL 18456614, at *4 (E.D.N.Y. Dec. 29, 2022), *R. & R. adopted*, 2023 WL 375554 (E.D.N.Y. Jan. 24, 2023). If there is a valid agreement to arbitrate, the FAA requires the court to stay the case until such arbitration has occurred. *See Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (holding that "a stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

> **B.** **The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act**

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022 (the "EFAA") amended the FAA by carving out an exception to Section 4 of the FAA. The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). A "sexual harassment dispute" is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Courts within the Second Circuit have generally employed a "plausibility standard" in determining whether a plaintiff has "alleged" conduct constituting sexual harassment. *See Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 585-88 (S.D.N.Y. 2023); *Brazzano v. Thompson Hine LLP*, No. 24-cv-01420, 2025 WL 963114, at *6 (S.D.N.Y. Mar. 31, 2025) (collecting cases); *Singh v. Meetup LLC*,

750 F. Supp. 3d 250, 253 (S.D.N.Y. 2024), *recons. denied*, No. 23-cv-9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024) (collecting cases).[1]

## III.   **DISCUSSION**

Here, the parties do not dispute the formation of a valid arbitration agreement. (Pl. Mem. L. at 1 ("Plaintiff does not dispute the existence of a valid arbitration agreement.").) Instead, the question before the Court is whether Plaintiff's claims are exempt from the agreement pursuant to the EFAA. As Plaintiff correctly points out, the determination of that issue depends on whether Plaintiff has plausibly alleged conduct constituting sexual harassment under the NYCHRL. (*See id.*)

Defendants argue that because the Amended Complaint does not contain any allegations of sexual remarks or sexual conduct, Plaintiff's allegations fall short of alleging sexual harassment. (Defs. Mem. L. at 9-11.) Defendants further argue that even if the Court were to construe Plaintiff's gender discrimination claim as a sexual harassment claim, she has failed to allege a plausible sexual harassment claim. (*Id.* at 12-16.) Defendants also take the position that Plaintiff's NYCHRL claim is not encompassed by the EFAA because New York City is a municipality rather than a State and the scope of the EFAA is limited to "federal, tribal, or state" sexual harassment. (*Id.* at 16-18.)

Plaintiff counters that she has met her burden to plead a plausible sexual harassment claim under the NYCHRL, the statute with "the most liberal" pleading standards, and urges the Court to

---

[1] In one case now on appeal before the Second Circuit, the court applied a less stringent "allegations standard," reasoning that "the EFAA speaks to 'allegations,' *i.e.* the content of a pleading, and not to the conclusion that those allegations plausibly state a claim for relief if the pleading is challenged under Rule 12(b)(6)." *See Diaz-Roa v. Hermes L., P.C.*, 757 F. Supp. 3d 498, 535 (S.D.N.Y. 2024). Because, as discussed below, the Court respectfully recommends finding that Plaintiff plausibly pleads sexual harassment under the NYCHRL, the Court need not decide whether the appropriate standard in EFAA cases is the higher plausibility standard or the allegations standard. *See Owens v. Price WaterHouseCoopers LLC*, 786 F. Supp. 3d 831, 842 (S.D.N.Y. 2025) (declining to weigh in on which standard applied because the plaintiff plausibly pleaded sexual harassment under the NYCHRL).

adopt the approach of those courts that have concluded that a Plaintiff need only plead that she was treated "less well" on account of her sex to sufficiently plead a claim under the NYCHRL. (Pl. Mem. L. at 1, 5-9.) Plaintiff further argues that Defendant's argument that the NYCHRL is excluded from the scope of the EFAA "contradicts nearly two dozen cases in this Circuit to date." (*Id.* at 10-11.)

A.    **The Interplay Between the EFAA and the NYCHRL**

As an initial matter, the Court agrees with Plaintiff that the overwhelming majority of courts in this Circuit to have analyzed the interplay between the EFAA and the NYCHRL have read "State law" to include municipal law, including the NYCHRL. *See Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 552 n.14 (S.D.N.Y. 2023); *Brazzano*, 2025 WL 963114, at *7 n.2; *Diaz-Roa*, 757 F. Supp. 3d at 543 n.15; *Singh*, 750 F. Supp. 3d at 255 n.1; *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 182 n.2 (S.D.N.Y. 2023). The Court notes that while Defendants do not concede this issue in their reply brief, they also chose not to offer any further argument in response to the caselaw cited by Plaintiff. (Defs. Reply at 2 n.2, ECF 17-7.) The Court respectfully recommends following the approach of the majority of courts in this Circuit concluding that the NYCHRL falls with the scope of the EFAA.

Next, the Court turns to the interpretation of "sexual harassment" under the NYCHRL. As other courts have acknowledged, the NYCHRL neither creates a claim of "sexual harassment," nor defines what conduct constitutes "sexual harassment." *See, e.g.*, *Owens*, 786 F. Supp. 3d at 843. Instead, the NYCHRL simply makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender ... of any person ... [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1)(a)(3). To establish liability under § 8-107(1)(a)(3), "the plaintiff need only

demonstrate ... 'that she has been treated less well than other employees because of her gender.'" *Mihalik v. Credit Agricole Cheuvreux N.A., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)). "[T]he NYCHRL, based on its clear textual meaning, protects employees against both 'discrimination' and 'sexual harassment.'" *Singh*, 750 F. Supp. 3d at 256 (citing N.Y.C. Admin Code § 8-101) (emphasis omitted). New York law recognizes that sexual harassment is just "one species of sex- or gender-based discrimination." *Williams*, 872 N.Y.S.2d at 37. "So long as the mistreatment could be considered either sexual harassment or gender-based discrimination, it would fall under the NYCHRL's protection." *Singh*, 750 F. Supp. 3d at 256 (emphasis omitted). Therefore, the text of the NYCHRL does not give courts guidance on what distinguishes conduct constituting "sexual harassment" within the broader category of conduct that constitutes "gender discrimination." *See id.* at 255-56.

Due to the lack of specific guidance within the text of the NYCHRL, courts have taken different approaches to defining what conduct constitutes sexual harassment under the NYCHRL. One court in the Northern District of California held that, as there is no statutory language in the NYCHRL distinguishing between "sexual harassment" and "gender discrimination," the court can interpret *any* "conduct involving treating [a] plaintiff less well than other employees based on her gender" as "sexual harassment" sufficient to trigger the EFAA. *See Ding v. Structure Therapeutics, Inc.*, 765 F. Supp. 3d 897, 902 (N.D. Cal. 2025); *see also Delo*, 685 F. Supp. 3d at 182 ("Under the NYCHRL, a plaintiff alleging a hostile work environment theory of sexual harassment only needs to show that she has been treated less well than other employees because of her gender." (internal quotation marks omitted)). Other courts have taken the position that "gender discrimination and sexual harassment are not coextensive under the statute," *Singh*, 750 F. Supp.

9

3d at 256, and that "sexual harassment is a subcategory of conduct within the broader category of gender-based discrimination," *Owens*, 786 F. Supp. 3d at 844. Under that analysis, to determine whether the EFAA applies to a NYCHRL case, "a court must analyze the nature of the conduct alleged and not rely solely on the cause of action asserted." *Id.* As the court explained in *Owens*, for a plaintiff's "case to fall within the scope of the EFAA, her NYCHRL discrimination claims must include allegations of conduct that constitutes sexual harassment as defined by the NYCHRL." *Id.* at 845.

As an initial matter, if the Court chooses to follow the line of cases concluding that sexual harassment and sexual discrimination claims are essentially coextensive under the NYCHRL, there can be no dispute that Plaintiff's claims would meet that standard. (*See generally* Am. Compl.) Assuming, however, the Court follows the approach requiring it to analyze the nature of the conduct alleged, this Court will now conduct that analysis to determine whether Plaintiff's NYCHRL discrimination claims include allegations of conduct constituting sexual harassment as defined by the NYCHRL.

### B. "Sexual Harassment" as Defined by the NYCHRL

As discussed above, the NYCHRL does not explicitly define sexual harassment. To determine the appropriate definition, courts have looked to guidance published by the New York City Commission on Human Rights (the "Commission"), whose interpretation of the NYCHRL is considered "persuasive authority." *Owens*, 786 F. Supp. 3d at 845 (citing *Wang v. James*, 227 N.E.3d 323, 326 (N.Y. 2023) ("Deference is accorded to an agency's interpretation of a statute when the interpretation involves the specialized competence or expertise the agency has developed in administering the statute.")). As the court in *Owens* noted, 786 F. Supp. 3d at 845, the Commission's website defines sexual harassment as "unwelcome verbal or physical behavior

10

based on a person's gender." *Stop Sexual Harassment Act*, NYC Commission on Human Rights, https://perma.cc/QVR5-XYFQ (last visited Feb. 15, 2026). Nothing in that definition includes the requirement that the unwelcome verbal or physical behavior be lewd or sexual in nature. *See Owens*, 786 F. Supp. 3d at 846 (declining to adopt a requirement that the unwelcome verbal or physical behavior be lewd or sexual in nature); *but see Singh*, 750 F. Supp. 3d at 257-58 (finding that the plaintiff's allegations of mistreatment based on her gender did not constitute sexual harassment).[2]

Given the lack of any reference in the Commission's guidance to "lewd" or "sexual" behavior as part of the definition of sexual harassment, numerous courts within the Second Circuit have declined to adopt a requirement that the unwelcome behavior be lewd or sexual in nature to fall within the definition of sexual harassment under the NYCHRL. *See Owens*, 786 F. Supp. 3d at 846; *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 453 (S.D.N.Y. 2024) (sexual harassment adequately alleged where the plaintiff was subject to "weekly, degrading comments and insults" related to her age, gender, and race); *Delo*, 685 F. Supp. 3d at 183-84 (allegations of sexist comments, comments on the plaintiff's pregnancy, hovering over the plaintiff's desk while she was pumping breast milk, chastising the plaintiff for bringing her baby on a performance trip, and firing the plaintiff without a reason were sufficient to allege sexual harassment); *Brazzano*, 2025 WL 963114, at *2, *7-8 (holding that, aside from the allegation of a lewd comment, the plaintiff alleged sexual harassment "in the form of a hostile work environment" where "she was subjected

---

[2] Defendants argue that the Commission's "Stop Sexual Harassment Act" poster suggests that allegations of sexual conduct are required to fall within the definition of sexual harassment because many of the examples of sexual harassment include such conduct. (Defs. Reply at 3.) While it is true that some of the examples include sexual or lewd conduct, the examples also include "making sexist remarks or derogatory comments based on gender[.]" While Defendants emphasize the word "sexist" in that example (*see* Defs. Reply at 3), the example also includes the words "or derogatory," indicating that the comment need not be overtly sexist, or for that matter, sexual, to fall within the definition of sexual harassment. *See* Stop Sexual Harassment Act Notice, https://perma.cc/QVR5-XYFQ (last visited Feb. 15, 2026).

to [ ] objectively hostile and abusive" conduct such as insults, exclusion, and demeaning comments).

Accordingly, the Court respectfully recommends following the caselaw defining sexual harassment under the NYCHRL as including "unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." *Owens*, 786 F. Supp. 3d at 846.

### C.      Plaintiff's Claims of Sexual Harassment Under the NYCHRL

Applying the above definition of sexual harassment, Plaintiff plausibly alleges conduct constituting sexual harassment under the NYCHRL because she plausibly alleges that her supervisor subjected her to unwelcome behavior based on her gender. Specifically, Plaintiff's hostile work environment claim includes allegations that (1) a supervisor "repeatedly told [her] to call him 'Boss' – a request he did not make of any males" (Am. Compl. ¶ 33); (2) the request to call her supervisor "Boss" was "to exert his power over her and to humiliate and demean her" (*id.* ¶ 34); (3) the supervisor questioned whether she was telling the truth by saying "[i]t's a he said she said situation" (*id.* ¶ 37); (4) the supervisor would give a male colleague credit for Plaintiff's work at meetings (*id.* ¶ 44); (5) Plaintiff was "being openly disrespected in meetings by her supervisor" (*id.* ¶ 46); and (6) Plaintiff's supervisor responded to Plaintiff's complaints of mistreatment "by talking to her in a demeaning manner as if she were a child" (*id.* ¶ 65). *See Mitura*, 712 F. Supp. 3d at 453 (holding that "degrading comments and insults" as well as comments meant to "humiliate" the plaintiff stated a claim for sexual harassment under the NYCHRL); *Brazzano*, 2025 WL 963114, at *7-8 (holding that the plaintiff alleged sexual harassment where "she was subjected to [ ] objectively hostile and abusive" conduct such as insults, exclusion, and demeaning comments). These claims, taken as true, paint a picture of an environment in which Plaintiff was

subjected to discriminatory, demeaning, and hostile behavior based on her gender. Such "unwelcome verbal or physical behavior based on a person's gender" falls within the category of sexual harassment proscribed by the NYCHRL. *Owens*, 786 F. Supp. 3d at 846.

Plaintiff's allegations are also sufficient "to meet the NYCHRL's low bar for pleading discriminatory intent." *See Owens*, 746 F. Supp. 3d at 848. "While the NYCHRL is 'not a general civility code,' it should be construed 'broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible.'" *Delo*, 685 F. Supp. 3d at 183 (citations omitted) (quoting *Mihalik*, 715 F.3d at 109, 113). Plaintiff's allegations that she was humiliated and demeaned in a manner that her male colleagues were not, are sufficient to plausibly plead that the behavior she faced was based on gender in violation of the NYCHRL. *See Owens*, 746 F. Supp. 3d at 848 (finding allegations that the plaintiff was "publicly demeaned and disparaged in a way that allegedly none of their male colleagues were" sufficient to allege violation of the NYCHRL).

Accordingly, the Court respectfully recommends finding that Plaintiff's hostile work environment claim falls within the parameters of the EFAA, and therefore, is not subject to mandatory arbitration.

### D.    **Severability**

The parties dispute whether, as here, when a court has determined that the EFAA applies to a harassment claim, the arbitration agreement is enforceable as to the other claims in the case. (Defs. Mem. L. at 18-24; Pl. Mem. L. at 12-14.) Defendants argue that to the extent the Court concludes the EFAA applies at all, the EFAA would block arbitration of only the harassment claim. (Defs. Mem. L. at 23-24.) Plaintiff counters that the EFAA bars arbitration of the case as a whole. (Pl. Mem. L. at 14.) This Court respectfully recommends a finding that the EFAA prevents arbitration of the entire case.

As discussed above, the EFAA makes a pre-dispute arbitration agreement invalid and unenforceable "with respect to *a case* which is filed under Federal, Tribal, or State law and relates to the … sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added). As multiple courts have concluded, the "clear, unambiguous, and decisive" meaning of the statute is that an arbitration clause is invalid with respect to the plaintiff's entire case, not to individual claims. *See Owens*, 786 F. Supp. 3d at 852; *Johnson*, 657 F. Supp. 3d at 558; *Diaz-Roa*, 757 F. Supp. 3d at 532 ("if the EFAA is properly invoked and applies, the pre-arbitration agreement is invalid and unenforceable with respect to the entire case."). As Plaintiff's other claims "clearly relate, factually and temporally, to her sexual harassment claims," *Baldwin v. TMPL Lexington LLC*, No. 23-cv-9899, 2024 WL 3862150, at *8 (S.D.N.Y. Aug. 19, 2024), *Johnson's* reasoning counsels that no claim may be arbitrated.[3]

Defendants argue that under the EFAA "claims are not exempt from compulsory arbitration merely because they are pleaded with sexual harassment claims." (Defs. Mem. L. at 23.) They cite to *Mera*, which held that the EFAA does not cover "claim(s) far afield" from a plaintiff's sexual harassment claim and did not permit the plaintiff to evade arbitration of her wage and hour claims. *Mera v. SA Hosp. Grp.*, 675 F. Supp. 3d 442, 448 (S.D.N.Y. 2023), *aff'd in part & rev'd in part*, 2025 WL 3202080 (S.D.N.Y. Nov. 17, 2025). This may be so; however, Plaintiff's sexual harassment claim and her additional discrimination claims all allege forms of discrimination based on race, sex, or national origin. As such, this case is readily distinguishable from *Mera*, in which the plaintiff's other claims related to wage and hour violations. *Id.* at 444. Moreover, on appeal, the *Mera* court found that "a claim relates to a sexual harassment dispute under the EFAA where

---

[3] The facts here with respect to severability are distinguishable from those in *Owens*, in which the court concluded that claims not raised in the same case as that plaintiff's sexual harassment claims were not subject to the EFAA. 786 F. Supp. 3d at 852-53. Here, there is no dispute that all of Plaintiff's claims are raised in the same case.

… that claim – like the sexual harassment claim – arise[s] from [a plaintiff's] employment … and relate[s] to [a plaintiff's] own experience working for that employer," and ultimately found that that plaintiff's entire case fell under the EFAA. *Mera v. S.A. Hosp. Grp., LLC*, No. 23-cv-3492, 2025 WL 3202080, at *8 (S.D.N.Y. Nov. 17, 2025) (internal citations and quotations omitted). Here, all of Plaintiff's other claims stem from discriminatory conduct by Defendants during her period of employment with Defendants, and therefore evade arbitration.

Finally, Defendants argue that the Arbitration Agreement's severability clause should be given effect "rather than void[ing] the entire agreement." (Defs. Mem. L. at 19 (quotation omitted).) Defendant's position, however, would permit severability clauses to defeat the intent of the EFAA, as interpreted by numerous courts, to invalidate arbitration agreements with respect to the entire case. Moreover, the severability clause in the Arbitration Agreement at issue here states that claims "may be severed ... to the extent permitted by law." (*Id.* Ex. A at 13, ECF 17-3.) To sever the remaining claims here would be contrary to the "clear, unambiguous, and decisive" meaning of the EFAA that an arbitration clause is invalid with respect to Plaintiff's entire case, not just to a particular claim. *See Owens*, 786 F. Supp. 3d at 852; *Johnson*, 657 F. Supp. 3d at 558; *Diaz-Roa*, 757 F. Supp. 3d at 532.

Accordingly, this Court respectfully recommends denying the motion to compel arbitration with respect to all of Plaintiff's claims.

## IV.   **CONCLUSION**

Based on the foregoing, this Court respectfully recommends denying the motion to compel in its entirety.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to the Honorable Judge Orelia M. Merchant.

If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

      **SO ORDERED.**

Brooklyn, New York
February 17, 2026

*Lara K. Eshkenazi*
_____
LARA K. ESHKENAZI
United States Magistrate Judge
